# EXHIBIT 2

26-013271-CZ FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 7/30/2026 7:51 PM Carla Keefe

**STATE OF MICHIGAN**
**IN THE WAYNE COUNTY CIRCUIT COURT**

MELISSA FRYER,

Plaintiff,

Case #: -CZ
Hon:

V

THE KROGER COMPANY
Defendant.

Thurman Legal Center
Rejanae M. Thurman (P85701)
403 S. Center St
Royal Oak, MI 48067
586-328-3125
Rejanae@thurmanlegalcenter.com

## COMPLAINT

*There is no other pending or resolved civil action arising out of the same transaction or occurrences alleged in this complaint.*

PLAINTIFF, Melissa Fryer, by and through her attorneys, Thurman Legal Center, submits the following Complaint against The Kroger Company ("Defendant").

## JURY DEMAND

COMES NOW PLAINTIFF, Melissa Fryer, and hereby makes her demand for trial by jury.

## JURISDICTION

1. Plaintiff, Melissa Fryer ("PLAINTIFF"), is an individual employee in Wayne County in the State of Michigan.

2. Defendant, The Kroger Company ("DEFENDANT"), is a corporation with a regular place of business in Wayne County.

3. This Court has jurisdiction over this action pursuant to M.C.L. § 600.8301, which provides that the Circuit Court has original jurisdiction over all civil cases where the amount in controversy exceeds $25,000.

## VENUE

4. Venue is proper in the Circuit Court for the County of Wayne because that is the county in which all unlawful actions giving rise to Plaintiff's claims occurred, it is the county in which Plaintiff resided, and it is the county in which Defendant resides and/or maintains its principal place of business.

## STATEMENT OF FACTS

5. Plaintiff is a Black female employee of the Kroger Company with several years of dedicated service to Kroger.

6. Throughout her employment, Plaintiff has consistently been a punctual employee, executing her duties as required with no history of issues, lateness, or official disciplinary warnings.

7. Despite her history of dedicated service to her employer, Plaintiff and her fellow Black colleagues have repeatedly experienced and reported to upper management severe racially charged harassment, discrimination, retaliation, and a hostile work environment from supervisor Chelsea Miller during their employment history with Defendant. A meaningful response was never presented by Defendant to correct this blatant discrimination and harassment.

8. Plaintiff's protected activity has been met with worsening harassment, retaliation, schedule manipulation, intimidation, and racially discriminatory treatment.

9. Plaintiff began employment with the Kroger Company in or around March of 2022. Since beginning her employment, Plaintiff has never been presented with an official disciplinary warning.

10. Beginning in or around April 2024, Plaintiff became the target of repeated public humiliation, false accusations, schedule manipulation, intimidation, and racially discriminatory treatment by supervisor Miller.

11. On April 15, 2024, Ms. Fryer was falsely blamed for workplace issues that occurred before she even arrived for her shift, requiring management to review surveillance footage to confirm she was not responsible.

12. Over the following weeks and months, Chelsea continued to demean Ms. Fryer in front of coworkers and undermine her employment.

13. Complaints were repeatedly made to upper management, but Ms. Fryer was routinely told the issues were "handled" while no meaningful corrective action occurred. Meetings that were supposedly going to occur never happened, and the harassment continued unabated.

14. On May 10, 2024, Ms. Fryer was intentionally left without adequate staffing on a high-volume holiday shift and then criticized afterward by supervisor Miller despite upper management acknowledging her work was satisfactory.

15. Supervisor Chelsea Miller then repeatedly attempted to create disciplinary issues where none existed.

16. On May 15, 2024, supervisor Miller changed Plaintiff's schedule without notice and instructed her to "deal with it." Plaintiff asked Miller why she disliked her so much.

Miller responded "Take a look in the mirror." Chelsea routinely treated employees of color with disrespect and hostility.

17. On May 30, 2024, the discriminatory conduct escalated further when supervisor Miller referred to three Black baggers as "slaves." Parents of the employees reportedly logged complaints against supervisor Miller, yet no meaningful action was taken.

18. Employees throughout the store continued submitting complaints regarding supervisor Miller's conduct, but Defendant protected her over its other employees because of her performance metrics and allowed the abuse to continue.

19. By June of 2024, Plaintiff had suffered a significant decline in her mental and emotional condition. Attempting to cease the discrimination and harassment she faced every time she appeared at work, Plaintiff requested and was subsequently denied for a transfer to a different Kroger location.

20. As a result of her transfer being denied and further subject to severe and pervasive workplace harassment, Plaintiff became increasingly depressed and anxious.

21. After her denied attempt to transfer locations, Plaintiff was subject to repeated attempts by supervisor Miller to terminate her on false premises.

22. On June 16, 2024, Plaintiff arrived at work to find upper management waiting for her after supervisor Miller falsely accused her of refusing to work and sitting in the office. For the second time, Surveillance footage proved to upper management that false allegations had been made against Plaintiff, with no corrective actions for supervisor Miller.

23. Plaintiff then privately asked supervisor Miller why she hated her so much. Supervisor miller then again responded: "Take a look in the mirror."

24. The ongoing harassment, racial hostility, emotional abuse, and total indifference of Defendant have led to catastrophic consequences for Plaintiff's physical and emotional health.

25. On July 1, 2024, Plaintiff awoke and began preparing for work with dangerously elevated blood pressure measuring 198/97, dizziness, and severe distress.

26. Plaintiff went to the emergency room and was admitted to the hospital. On July 4, 2024, Plaintiff suffered a stroke.

27. Plaintiff's life has been permanently altered since her stroke. Plaintiff now suffers from depression, impaired balance, limited hand strength, short-term memory issues, emotional distress, suicidal ideation, and ongoing physical limitations requiring therapy and use of a cane.

28. Plaintiff remains on medical leave and has lost substantial income, benefits, and retirement security. Before her stroke, Plaintiff intended to continue working until 2027.

29. As a result of her stroke, Plaintiff has had her career and normal life taken from her.

30. Plaintiff has incurred significant costs due to documented out-of-pocket medical expenses, therapy, medication, and continuing care. Plaintiff has further sustained substantial wage loss, loss of employment benefits, health insurance, retirement contributions, and future earning capacity.

31. Prior to her disability, Plaintiff earned substantial employment income through Kroger and anticipated continued employment for several more years.

32. Plaintiff has suffered debilitating and lifelong consequences as a direct result of the severe harassment, racial discrimination, and hostility in her workplace environment.

33. Defendant was given ample notice and multiple opportunities to intervene in their employee's discriminatory conduct, and chose not to intervene due to supervisor Chelsea Miller's high performance metrics.

34. The conduct described herein constitutes violations of Title VII of the Civil Rights Act of 1964, as amended.

**COUNT I**

**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")**

35. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

36. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

37. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or skin color, or association with a particular race.

38. Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to ELCRA.

39. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

40. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

41. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

42. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has suffered lifelong debilitating physical injury, mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

43. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT II**

**RETALIATION IN VIOLATION OF THE ELCRA**

44. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

45. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

46. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

47. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

48. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff complained about discriminatory treatment, and a hostile work environment.

49. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she spoke directly to agents of Defendant.

50. Following Plaintiff's complaints, Defendant failed to take corrective action, dismissed her concerns, and continued to subject her to humiliation and unequal treatment.

51. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

52. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

53. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered debilitating lifelong physical injury, losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

54. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

**COUNT III**

**HOSTILE WORK ENVIRONMENT**

55. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

56. Plaintiff was subjected to unwelcome conduct, including false accusations, public humiliation, and sarcastic and dismissive remarks.

57. The conduct described herein was based on Plaintiff's race and was severe or pervasive enough to alter the conditions of her employment and create an abusive work environment.

58. Plaintiff made repeated complaints to supervisors and management, but Defendant failed to take appropriate action to stop the harassment.

59. Defendant knew or should have known about the hostile work environment and failed to take immediate and appropriate corrective action.

60. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered the damages described above Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

## FAILURE TO PREVENT AND REMEDY RACE DISCRIMINATION

61. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

62. At all relevant times, Defendant was Plaintiff's employer within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA").

63. Plaintiff was subjected to repeated race-based harassment, discriminatory conduct, and racially hostile conditions by coworkers and management.

64. Defendant had actual and constructive knowledge of this conduct through:

a. Plaintiff's complaints to upper management,

b. Formal complaints from customers and other employees; and

c. Highly visible incidents occurring in the presence of multiple staff members.

65. Despite this knowledge, Defendant failed to take prompt, appropriate, or effective remedial action to stop the discrimination or prevent its recurrence.

66. Defendant allowed known offenders to return to their positions without discipline, corrective training, or monitoring, thereby condoning and perpetuating a racially hostile work environment.

67. Defendant's failure to prevent and remedy discrimination constituted a violation of ELCRA and directly caused Plaintiff to suffer physical, professional, emotional, and psychological harm.

68. Defendant's conduct was willful, reckless, and in conscious disregard of Plaintiff's civil rights.

69. Plaintiff is entitled to all remedies available under ELCRA, including but not limited to compensatory damages, exemplary damages, injunctive relief, costs, and reasonable attorney fees.

## COUNT V

## NEGLIGENT SUPERVISION AND RETENTION

70. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71. Defendant owed Plaintiff a duty to exercise reasonable care in the supervision, training, and retention of its employees, administrators, and agents.

72. Defendant knew or should have known that certain employees and agents engaged in racially discriminatory conduct, retaliation, and the use of racist language and symbols.

73. Despite this knowledge, Defendant failed to adequately supervise, discipline, retrain, or remove such individuals.

74. Defendant retained employees and agents who posed a foreseeable risk of harm to Plaintiff and other employees of color.

75. Defendant's failure to supervise and retain competent personnel created and perpetuated a racially hostile and retaliatory work environment.

76. Defendant's negligence was a proximate cause of Plaintiff's injuries, including lifelong physical disability, emotional distress, professional harm, and loss of workplace safety and dignity.

77. Defendant's conduct demonstrated a reckless indifference to the rights and well-being of Plaintiff.

78. Plaintiff seeks all damages allowed by law, including compensatory damages, as well as costs and other appropriate relief.

**RELIEF REQUESTED**

PLAINTIFF, Melissa Fryer, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Award Plaintiff compensatory damages;

2. Award Plaintiff exemplary damages;

3. Award Plaintiff costs and attorney fees incurred in connection with this action; and

4. Award any other and further relief that the Court may deem appropriate and just.

Dated: July 30, 2026

Respectfully submitted,

*/s/ Rejanae M. Thurman*

Rejanae M. Thurman (P85701)
Thurman Legal Center
*Attorneys for Plaintiff*
403 S. Center St.
Royal Oak, MI 48067
586-328-3125
Rejanae@thurmanlegalcenter.com

26-013271-CZ FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 7/30/2026 7:51 PM Carla Keefe

**STATE OF MICHIGAN**
**IN THE WAYNE COUNTY CIRCUIT COURT**

MELISSA FRYER,

Plaintiff,

Case #: -CZ
Hon:

V

THE KROGER COMPANY
Defendant.

Thurman Legal Center
Rejanae M. Thurman (P85701)
403 S. Center St
Royal Oak, MI 48067
586-328-3125
Rejanae@thurmanlegalcenter.com

*There are no pending actions between these parties in this circuit.*

**JURY DEMAND**

COMES NOW PLAINTFF, MELISSA FRYER, and hereby makes her demand for trial by jury.

Dated: July 30, 2026

Respectfully submitted,

*/s/ Rejanae M. Thurman*
Rejanae M. Thurman (P85701)
Thurman Legal Center
*Attorneys for Plaintiff*
403 S. Center St.
Royal Oak, MI 48067
586-328-3125
Rejanae@thurmanlegalcenter.com